**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WELLS DAIRY, INC., d/b/a Wells Blue Bunny, Respondent.**

No. 88–1743.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1988.

Decided Jan. 6, 1989.

Elizabeth A. Dunn, Washington, D.C., for petitioner.

Joseph Dreesen, Omaha, Neb., for respondent.

Before FAGG, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

PER CURIAM.

The National Labor Relations Board (Board) petitions this court to enforce the Board's order against Wells Dairy, Inc. (Wells), a nonunion company located in Le-Mars, Iowa. Wells argues the order is not supported by substantial evidence. After a careful review, we affirm in part, reverse in part, and enforce the Board's order as modified.

Under section 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158, an administrative law judge (ALJ) concluded Wells had committed several unfair labor practices. Specifically, the ALJ found Wells discharged employees Gilbert Weiler and Glenn Brown because of their participation in both concerted and union activities. *See id.* § 158(a)(1), (a)(3). The ALJ also found Wells threatened employees with reprisals if they engaged in activity protected by section 7, *id.* § 157. *See id.* § 158(a)(1). Finally, the ALJ found Wells coercively interrogated employees about union activity. *See id.* On review, the Board adopted the ALJ's findings of fact and recommended decision.

Wells produces a number of dairy products, including ice cream. Weiler and Brown worked as machine operators at Wells' ice cream plant. In early 1986, Wells established a new ice cream line. Weiler and Brown transferred to the crew working on the new line. By June of the same year, inventory exceeded sales, and

Wells stopped production of the new line. Wells then reassigned these crew members to other production lines. Weiler and Brown were dissatisfied. The men believed they were entitled to a better assignment because of their seniority and knowledge of Wells' operation.

In its employee handbook, Wells stated a policy of open communication with management about employee problems or concerns. Thus, Weiler and Brown spoke several times with production manager Ron Delperdang, who reported to plant manager David Wells. Weiler also contacted personnel manager Mike Ellis.

The last confrontation between either Weiler or Brown and Wells management occurred in mid-August when Delperdang indicated to Weiler that other employees who received "bad deals" did not complain about assignments. From that point until they were discharged almost two weeks later, neither Weiler nor Brown complained to management.

Instead, Weiler and Brown discussed contacting a representative of the United Food and Commercial Workers Union, Local No. 179, AFL–CIO (Union). Brown went on vacation, and while on vacation, he contacted a Union official. On August 26, 1986, although still on vacation, Brown went to the ice cream plant to see Weiler. Brown told Weiler that he had scheduled a meeting with a Union representative on September 5, 1986.

At 8:30 a.m. on August 27, 1986, Delperdang called Weiler and Brown. Delperdang told both men to report to the plant for separate meetings that afternoon. Ellis, Delperdang, and David Wells attended the meetings and informed Weiler and Brown they were being discharged for constant complaining. The same day Delperdang informed several employees that Weiler and Brown had been fired for constant complaining. Delperdang also implied that others who acted in the same manner could be terminated.

Although Wells is not unionized, the company has established an employee committee to deal directly with management in negotiating wage increases and in communicating grievances. Ellis met with this committee approximately a week after the discharges. At this meeting, Ellis inquired about a rumored Union meeting. The employees on the committee responded that no union organizational meeting was planned; instead, the employees were going to meet to consider the enforceability of wage and benefit agreements between their committee and the company.

In considering the Board's petition for enforcement, we do so under a limited standard of review. We must enforce the Board's order if the findings of fact are supported by substantial evidence on the record as a whole. *Ballou Brick Co. v. NLRB*, 798 F.2d 339, 341 (8th Cir.1986). Under this framework, we turn to examine the record.

██ With regard to the Board's determination that Wells fired Weiler and Brown based on their union activity, *see* 29 U.S.C. § 158(a)(1), (a)(3), Wells contends it did not know about Weiler's and Brown's Union contacts when making the discharge decision. The Board, however, found the timing of events suspicious and the witnesses for Wells not credible. The Board further found Wells' reason for discharging the men was pretextual. The record shows Weiler and Brown had not complained for the two weeks preceding their discharge. In firing Weiler and Brown, Wells failed to follow its own progressive system for dismissal: verbal warning, written reprimand, suspension, and discharge. Instead, Wells abruptly fired Weiler and Brown. The company did so the day after Brown was at the plant to inform Weiler of the Union meeting. Finally, Wells' opposition to unions is clearly stated in the employee handbook. This opposition, the timing of events leading to discharge, and the lack of earlier warnings or reprimands support the finding that Wells fired both men based on their union activity. *See Ballou Brick Co.*, 798 F.2d at 342. Because we believe the Board properly determined that Wells fired Weiler and Brown for union activity, we need not discuss the Board's other finding that Wells discharged these men for engaging in concerted activity.

■ The Board also found Delperdang's comments, made shortly after the firings, constituted threats of reprisal to those employees who might engage in activity protected by section 7, including concerted activity. Wells had an established policy of open communication with management about general employee grievances. Yet, employees could have understood Delperdang's comments to mean that future airing of their joint concerns would lead to discharge or other reprisals. The record thus supports the Board's finding of a violation under section 8(a)(1), 29 U.S.C. § 158(a)(1). *See Medallion Kitchens, Inc. v. NLRB*, 806 F.2d 185, 191–92 (8th Cir. 1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 813 (1987).

■ We, however, do not believe the record supports the Board's finding of coercive interrogation. *See General Thermo, Inc. v. NLRB*, 664 F.2d 195, 197 (8th Cir.1981) (listing factors to consider). Section 8(a)(1) does not prohibit an employer from questioning employees about unionization. *NLRB v. Douglas Div., The Scott & Fetzer Co.*, 570 F.2d 742, 745 (8th Cir. 1978). Rather, an employer cannot make coercive inquiries that interfere with an employee's exercise of section 7 rights. *Id.*

■ Here, Ellis' discussion with the committee did not rise to the level of coercive interrogation. Their meeting was nothing more than an informal exchange of information, not an interrogation. Ellis did not make threats of reprisal at the committee meeting, and the employees did not show fear by giving evasive answers. The committee's focus was not on unionization, and Ellis said nothing to impede the committee's activities. Under these circumstances, the Board's determination is not supported by substantial evidence.

Accordingly, we affirm the following determinations by the Board: Wells fired Weiler and Brown for union activity, *see* 29 U.S.C. § 158(a)(1), (a)(3); and management's statements to employees about the recent discharges constituted interference with the employees' right to engage in section 7 activity, which includes concerted activity, *see id.* § 158(a)(1). We, however,

reverse the Board's finding of coercive interrogation, and thus, the Board must modify the notice it will require Wells to post by deleting any reference to coercive interrogation.

Enforced as modified.